JOHN GODKIN, DEFENDANT IN ERROR, v. WILLIAM F. BAILEY ET AL., PLAINTIFFS IN ERROR.

Submitted December 10, 1906—Decided March 4, 1907.

A claim for damages for failure to deliver goods in pursuance of an executory contract of sale is a claim for unliquidated damages, and not the subject of set-off.

---

On error to the Supreme Court.

For the defendant in error, *John R. Hardin.*

For the plaintiffs in error, *Alfred F. Stevens.*

The opinion of the court was delivered by

SWAYZE, J.   The plaintiff sued in *assumpsit* for the price of goods sold and delivered.   The defendants pleaded the general issue, and gave notice that they would claim an offset for the difference in price paid by them for lumber which the plaintiff had failed to deliver.   At the trial the defendants offered to prove a failure of the plaintiff to deliver lumber under a contract several years before the sale of the goods for which the suit was brought, and that by reason of this failure the defendants were obliged to go into the market, where the prices for lumber had risen, and purchase other lumber to take its place; that consequently the defendants were entitled to compensation for the loss sustained, and to put that loss in as an offset.   The Chief Justice overruled this offer of the defendants upon the ground that the act providing for set-off limits the right to liquidated damages.   It is the propriety of this ruling that is now before us for review.

Our original act relating to this subject, passed May 5th, 1722 (*Allin. L., p.* 66), authorizes a set-off where two persons dealing together are indebted upon bonds, bills, bargains, promises, accounts or the like.   This act antedates the English act of 2 George II. upon the same subject, which was limited to cases of mutual debts.   The act of 1722 remained substantially unchanged (except that the word "contracts" was inserted, and the remedy was extended to suits where executors and administrators were parties, and a provision was made as to the offset of a penal sum) until 1874.   *Pat. L., p.* 254; *Rev.* 1820, *p.* 305; *Rev. Stat., p.* 801.   In 1874 the statute was revised and the present form adopted.   *Rev.* 1877, *p.* 1096; *Gen. Stat., p.* 3109.   In its present form the statute provides that if two or more persons be indebted to each other, such debts or demands, not being for unliquidated damages, may be set off against each other.   Under the old act it had been held by the Supreme Court, in *Marshall* v. *Hann,* 2 *Harr.* 425, that wherever the debt was so certain that *indebitatus assumpsit* would lie, it might be set off, and this was the test which had been adopted by the King's Bench in *Howlet* v. *Strickland,* *Cowp.* 56,

57. The English statute, however, relating to mutual debts was not as broad as our statute, and the word "debts" was evidently used in the technical sense of the common law. There is nothing in *Evans* v. *Trenton,* 4 *Zab.* 764 (at *p.* 769), which conflicts with Marshall v. Hann, for the claim of the defendant in that case was for services rendered, for which he could count in *indebitatus assumpsit.*

The act under which the revision of 1874 was made (*Pamph. L.* 1871, *p.* 88) provided that no changes should be made in the phraseology or distribution of the sections of any statute that had been the subject of judicial decision by which the construction as established by such decision should be impaired or affected. In view of this statutory provision, it is probable that the revisers intended no more by the change of phraseology than to simplify the language of the act and make it more concise. The new act ought, then, to be construed as the old act had previously been construed in Marshall v. Hann. If so, the contention of the defendants cannot prevail, for the reason that *indebitatus assumpsit* would not lie to recover damages for non-performance of a contract. It was essential to this count to allege an indebtedness on the part of the defendant to the plaintiff and a promise in consideration thereof. It was therefore available where the consideration had been executed. 1 *Chit.* 341 (especially at *p.* 347). The supplemental brief of counsel for the defendants fails to take into account the distinction between an action of *assumpsit,* where the plaintiff seeks to recover damages for breach of an express contract, and a count in *indebitatus assumpsit,* where the plaintiff seeks to recover on a contract implied from an existing debt.

We are inclined to think that this case might be thus disposed of, but we prefer to rest it upon a construction of the act of 1874 as it now stands. The language of that act. authorizes the set-off of demands which are not for unliqui-- dated damages, and the question presented is whether a de-- mand for damages for breach of a contract to deliver goods is unliquidated. Ordinarily it is, and is given as a special instance of a claim for unliquidated damages in 1 *Chit. Pl.*

571, 572; *Freeman* v. *Hyett*, 1 *W. Bl.* 394. The reason is obvious. In an action for damages for failure to deliver goods the plaintiff is entitled to recover not merely the difference between the contract price and the market price which he is obliged to pay, but is also entitled to recover special damages for the breach of the contract, including loss of profits. *Wolcott* v. *Mount*, 7 *Vroom* 262; 9 *Id.* 496. Clearly these special damages for breach of the contract are uncertain in amount, and therefore unliquidated.

In the case at bar, however, the claim of the defendants was for the difference between the contract price and the price actually paid by them. The argument is that while this price may have been at one time uncertain, it had been rendered certain by what subsequently took place, and that the case is within the language of the Supreme Court in *Heckscher* v. *Trotter*, 19 *Vroom* 419; *Moore* v. *Richardson*, 36 *Id.* 531 (at *p.* 536), and *Sullivan* v. *Moffat*, 39 *Id.* 211. This argument, however, assumes that the measure of damages is the difference between the contract price and the price paid by the defendants. Such is not the rule. The true measure of damages, as stated by *Benjamin on Sales*, is the difference between the contract price and the value of the goods at the date fixed for delivery. The value is *prima facie* the market price, but there may be cases where there is no market, and the value must be otherwise determined, for example, by the price of the best substitute procurable. *Benj. Sales* (*5th Eng. ed.*) 987. An instance in which the market price did not afford a measure of damages is to be found in *Rhind* v. *Freedley*, *ante p.* 138, decided at the last term by the Supreme Court. Even in cases where there may be said to be a market price, the determination of that price involves a consideration of the identity in the quality of the goods and an allowance for differences in prices actually paid, which vary from day to day, and with the skill in bargaining of the vendor and the purchaser in each case. The market price must often, if not usually, be determined by a jury in view of the different elements which may cause variations in any

particular case. The final result must be uncertain, and the damages are therefore unliquidated.

We have dealt with the question as if the only claim made by the defendants was to recover the difference between the contract price and the market price. The record, however, does not put the defendants in so favorable a position, for the claim in the notice of set-off was to recover the difference between the contract price and the price actually paid by the defendants, which may or may not have been the market price, and the offer at the trial which was overruled by the Chief Justice was even broader than the notice, for it was an offer to prove the loss sustained by the defendants, and the claim was for compensation for that loss, which may have included special damages and loss of profits. This claim was clearly for unliquidated damages.

In any event, the ruling of the Chief Justice was correct, and the judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.

*For reversal*—None.