# GEORGE B. CLEMMER

## *vs.*

## CALVERT C. MERRIKEN.

*Breach of Contract—Delivery of Stock—Measure of Damages.*

In an action for breach of a contract to deliver corporate stock to defendant in payment for services, plaintiff having offered evidence tending to show a breach of the contract by defendant, and he being entitled to at least nominal damages upon the finding of such breach by the jury, the court could not direct a verdict for defendant on the ground of lack of evidence legally sufficient to entitle him to recover, or because he failed to show the value of his services or the actual value of the stock at the time it was to have been delivered.          p. 680

For breach of a contract to deliver corporate stock in payment for services, the measure of damages is not the par value of the stock, even though this is named in the contract, but the actual value of the stock at the time named for its delivery.

pp. 679, 680

That defendant failed to deliver the stock as agreed does not entitle the plaintiff to recover the value of his services, rather than the value of the stock.          p. 681

*Decided January 31st, 1924.*

Appeal from the Superior Court of Baltimore City (DAWKINS, J.).

Action by Calvert C. Merriken against George B. Clemmer. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Stephen W. Leitch,* for the appellant.

*Wilbert L. Merriken* and *Clarence A. Tucker,* with whom were *Knapp, Ulman & Tucker* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City on the common counts in assumpsit and a special count, which charged "that on or about the 11th day of August, 1921, the defendant retained the services of the plaintiff, and in return for such services promised in writing to deliver" to the plaintiff "100 shares of the common stock of the Adamantex Brick Company of the par value of $10.00 per share"; that the said services had been fully rendered "as agreed," but that the defendant had failed and refused "to deliver the said stock."

The suit was brought under affidavit, and there was annexed to the declaration the following account and contract:

"George B. Clemmer, Lexington Building, c/o Adamantex Brick Company, Baltimore, Md., to

Calvert C. Merriken, Dr.

As per contract of August 11th, 1921, services rendered ........................$1,000.00

Calvert C. Merriken,
Attorney at Law,
Denton, Md.

August 11, 1921.

The undersigned, the secretary of the Adamantex Brick Company of Baltimore, Md., hereby retains the services of Calvert C. Merriken, Esq., of Denton, Md., and hereby agrees to pay the sum of $1,000.00 for the same in the following manner, viz.:

By immediate delivery of 100 shares of the common stock of the Adamantex Brick Company, par value $10.00.

Said signed application for same being dated August 11, 1921, stock to be delivered at once.

Geo. B. Clemmer."

The defendant pleaded that he never was indebted, and that he did not promise as alleged, and the trial of the case on the issue joined on those pleas resulted in a verdict and judgment in favor of the plaintiff for $1,000, from which the defendant has brought this appeal.

The plaintiff offered in evidence the contract referred to, and also offered evidence tending to show that he was an attorney-at-law, and engaged at Denton, Caroline County, Maryland, in the business of selling real estate and "handling mortgage loans"; that the defendant came to his office on the 11th of August, 1921, to sell him some stock in the Adamantex Brick Company, and that he entered into the contract mentioned "for the purchase of $1,000.00 worth of the stock"; that he had been engaged for seven years "in buying and selling mortgages," was "in touch" with "the finances * * * in the county," and kept "a tabulated list of the buyers and sellers" and "of all stock transactions," and that the "services" referred to in said contract were to consist in his giving the defendant the "result of that compilation," which "included the latest copy of that list showing those purchasers"; that he gave the defendant "a portion of" the names and addresses of the parties the first day he came to see him, and later gave him an "additional number of names," &c.; that the defendant and Mr. Eaton, who was working for the defendant, came to see him four times during the period of two or three weeks for information in regard to the parties whose names he had given them; that the defendant required him to sign an application for the stock, dated August 11th, 1921, because he said "that was necessary in order to get the stock properly issued"; that no demand was ever made on him to pay for the stock because it "was considered a paid-up application"; that he had demanded delivery of the stock, but it had never been delivered to him, and that the defendant had refused to do so.

The defendant testified that he was secretary of the Adamantex Brick Company, which was incorporated in July, 1921,

and that he went to the Eastern Shore for the purpose of
selling the stock of that company; that after trying to do so
for several days he determined to try to get somebody there
to sell it and went to see the plaintiff for that purpose; that
he thought the plaintiff through his influence could assist him
in selling the stock, and that plaintiff told him that he thought
he could sell the stock to "the amount of $10,000 at least,"
and that he, witness, fixed the rate of his commission at ten
per cent.; that the plaintiff said, "If you will sign an agree-
ment to the effect that you will give me $1,000 worth of the
stock I will give you my list of names and give you all the
names that I have of people in this section, and, to make it
stronger, I would suggest that I sign an application for
$1,000 of stock, and you can show the people up there that
I have become a stockholder in the concern"; that he went to
see two people whose names had been given him by the
plaintiff, and that later Mr. Eaton, the vice-president of the
company, spent ten days interviewing the people whose names
had been furnished by the plaintiff, but that no stock of the
company was sold on the Eastern Shore; that the word "serv-
ices" in the contract meant that the plaintiff "was going to
give every assistance and even talk to people himself in be-
half of the sale of stock, and that if any sales were made as
a result of that, he would have certainly paid the plaintiff a
commission of ten per cent.; that the stock was not delivered
because the witness "did not think that the plaintiff earned
it in any sense of the word. Plaintiff did not sell any stock
of the company and really did not give any assistance in
selling any stock of the company as was agreed upon ver-
bally by us."

The only exception in the case is to the granting of the
plaintiff's fourth prayer and the rejection of the defendant's
first, second and third prayers.

By his first and second prayers the defendant asked the
court to instruct the jury that the verdict must be for the
defendant (1) because there was no evidence in the case

legally sufficient to entitle the plaintiff to recover, and (2) because the plaintiff had failed to offer any evidence "to show the fair and reasonable value of the services alleged to have been rendered by" him, and by his third prayer the defendant asserted that the verdict should be for him because the plaintiff had "failed to offer any proof as to the value of the 100 shares of stock * * * as of the date said stock was to have been delivered."

The plaintiff's fourth prayer is as follows:

"The plaintiff prays the court to instruct the jury that (if they find that) the amount of money due the plaintiff by the defendant for work and labor performed and materials furnished or for services rendered by the plaintiff under such contract as they may find to have been the contract between the parties, has not been paid to the plaintiff, then he is entitled to recover in this action the value under said contract of said work and labor performed and materials furnished or services rendered by him as shown by the evidence in the cause, notwithstanding they may find that there was a provision in such contract, as they may find, as aforesaid, that the said plaintiff was to receive the payment named in the signed agreement dated August 11th, 1921, offered in evidence, in stock of the Adamantex Brick Company of Maryland; provided they believe the defendant never tendered the plaintiff said stock."

In the case of *Schneider* v. *Hagerstown Brewing Co.,* 136 Md. 151, the appellant agreed in writing to serve the appellee for the period of five years at a salary of $150.00 per month, "payable as follows: Thirty dollars per week in cash * * * the balance of salary, thirty dollars ($30.00) per month, to be paid in Brewery Company stock, par value $100.00 per share, making a total salary for the year of eighteen hundred dollars ($1,800.00), and the same to follow every year." The cash compensation was paid the appellant, but none of the stock which was to form a part of his salary was ever issued, and the appellant brought suit to re-

cover the par value of the stock. In disposing of the case this Court said: "The plaintiff's theory is that he is entitled to recover the par value of the stock because of the fact that the stock itself was never delivered. But this is not the proper measure of his right. It was the actual value of the stock, and not its nominal par value, which determined the real amount of his compensation by that form of payment. Consequently the actual value of the stock at the time provided by the contract for its issuance was the true measure and limit of his recovery. This was the rule applied in *Alexander* v. *Macauley,* 6 Md. 359, and recognized also in *Orange, A. & M. R. R. Co.* v. *Placide,* 35 Md. 315." Applying the rule stated to this case, it becomes apparent that there was no error in the rejection of the defendant's prayers. The plaintiff having offered evidence tending to show a breach of the written contract by the defendant, upon the finding of such breach by the jury he was entitled to recover at least nominal damages (*McGrath* v. *Gegner,* 77 Md. 331), and the court could not properly have directed a verdict for the defendant on the ground that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, or because he had failed to show the value of his services or the actual value of the stock at the time it was to have been delivered to him under the contract. The appellant insists as a further reason why said prayers should have been rejected, that the written contract itself furnishes at least *prima facie* evidence of the value of the stock and brings the case within the decision in *Orange, A. & M. R. R. Co.* v. *Placide, supra.* That contention, however, is also disposed of by the case of *Schneider* v. *Hagerstown Brewing Co., supra,* where the court held that the mere statement of the par value of the stock in a contract very much like the one in this case did not amount to an agreement between the parties as to the "price or rate of valuation at which the stock was to be issued to the plaintiff."

It is also apparent that the court below erred in granting the plaintiff's fourth prayer, because, in addition to its faulty construction, it instructed the jury that the plaintiff was entitled to recover the value of the services, etc., rendered by him, notwithstanding the jury found that by the terms of the contract the plaintiff was to be paid in the stock of the Adamantex Brick Company, provided they further found that the defendant "never tendered the plaintiff said stock." The refusal of the defendant to deliver the stock could not change the measure of damages for the breach by the defendant of the written contract, which, under the rule we have stated, was the actual value of the stock at the time it should have been issued in accordance with the terms of the contract.

Because of the error in granting the plaintiff's fourth prayer, the judgment must be reversed and a new trial awarded.

*Judgment reversed, with costs to the appellant,*
*and a new trial awarded.*